**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------ x

ANUPAMA PORWAL, *individually and on behalf of*　:
*all others similarly situated,*　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiffs,　　:
　　　　　-against-　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
BALLARD POWER SYSTEMS, INC. and R.　　　:
RANDALL MACEWEN,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendants.　　:
------------------------------------------ x

MEMORANDUM DECISION
AND ORDER

18 Civ. 1137 (GBD)

GEORGE B. DANIELS, United States District Judge:

Lead Plaintiff Robert MacArthur and Named Plaintiff Anupama Porwal are shareholders

of Defendant Ballard Power Systems, Inc. ("Ballard") who bring this putative class action for

securities fraud against Ballard and its President and CEO, Defendant R. Randall MacEwen.[1] (*See*

Am. Compl.)  Defendants move to dismiss Plaintiffs' amended complaint for failure to state a

claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   (ECF No. 24.)

Defendants' motion is GRANTED.

## I.   FACTUAL BACKGROUND

Ballard is a clean-energy company that develops, manufactures, and sells hydrogen fuel

cell products. (Am. Compl. ¶ 19.)  In October 2014, MacEwen was appointed President and CEO

of Ballard. (*Id.* ¶ 25.)  Under MacEwen's leadership, in 2015, Ballard began focusing its strategy

on the Heavy Duty Motive market (which consists of bus, truck, rail and marine applications of

fuel cell systems) in China. (*Id.* ¶¶ 21, 26.)  Over the next few years, Ballard announced that it

---

[1] This putative class action was initiated by Porwal. (*See* Compl., ECF No. 1.)  On April 3, 2018, this Court
entered an Order appointing MacArthur as Lead Plaintiff and approving his selection of counsel. (ECF No.
14.)  The putative class consists of individuals who "purchased or otherwise acquired Ballard securities
between July 18, 2016 and May 1, 2018." (Am. Class Action Compl. ("Am. Compl."), ECF No. 23, ¶ 1.)
The class has not yet been certified.

had made several purchase orders and deals with Chinese businesses, including Guangdong Synergy Hydrogen Power Technology Co., Ltd. ("Synergy") and Zhongshan Broad-Ocean Motor Co., Ltd. ("Broad-Ocean"). (*Id.* ¶¶ 33, 41.)

Plaintiffs allege that Defendants made false and misleading statements regarding: (1) the value of Ballard's joint venture and strategic collaboration with Synergy and Broad-Ocean; (2) the operational progress of the joint venture; (3) Broad-Ocean's financial condition; and (4) Ballard's Order Book and Order Backlog.[2] (*See id.* ¶¶ 39–86.)

## A. The Value of the Joint Venture and Strategic Collaboration

On July 18, 2016, Ballard issued a press release announcing the "signing of definitive agreements in Foshan, China with [Synergy] for the establishment of a[] . . . fuel cell stack production operation in the City of Yunfu, in Guangdong Province." (*Id.* ¶ 39.) The press release states, in part, that "[s]ubject to closing, the transaction has a contemplated minimum value to Ballard of $168 million over 5-years [sic]." (*Id.*) The press release also states that a "joint venture – named Guangdong Synergy Ballard Hydrogen Power Co., Ltd. ('JVCo') – has been registered to undertake the . . . fuel cell stack manufacturing operations." (*Id.*) The press release explains, "On commissioning of the operation, expected in 2017, Ballard will be the exclusive supplier of membrane electrode assemblies (MEAs) for each fuel cell stack manufactured by the joint venture, with minimum annual MEA volume commitments on a 'take or pay' basis totaling in excess of $150 million over the initial 5-year term from 2017 to 2021." (*Id.*)

On July 26, 2016, Ballard issued a press release announcing a "Strategic Collaboration and Equity Investment Deal" with Broad-Ocean and Synergy. (*Id.* ¶ 41.) The press release states, "On

---

[2] Ballard uses the term "Order Backlog" to represent the "aggregate value of orders for which customers have made contractual commitments." (Am. Compl. ¶ 82.) Balled uses the term "Order Book" to represent the portion of the Order Backlog that Ballard expects to deliver in the next twelve months. (*Id.*)

July 18, 2016, Broad-Ocean signed an agreement with [Synergy] relating to the purchase of 10,000 fuel cell vehicles, . . . all of which are expected to have Ballard's . . . fuel cell technology inside." (*Id.*) Broad-Ocean also made a "$28.3 million equity investment in Ballard, representing 9.9% of the company following the transaction." (*Id.*) On August 11, 2016, Ballard delivered an investor presentation further explaining the strategic framework, which contained a slide listing several contracts that Ballard had entered with Broad-Ocean, Synergy, and others. (*Id.* ¶ 43.) The slide stated that the "contracts ensure demand, production capacity & capital to underpin fuel cell-powered transportation momentum in China." (*Id.*)

On October 25, 2016, Ballard issued another press release announcing the closing of the transaction described in the July 18, 2016 press release. (*Id.* ¶ 44.) The October 25, 2016 press release states that "[t]he transaction has an estimated minimum value to Ballard of $170 million over 5-years [sic]," and repeats the statement in the July 18, 2016 press release regarding the annual MEA volume commitments. (*Id.*)

On December 22, 2016, Ballard issued a press release that repeated the statements in prior press releases about the minimum value of the transaction and annual MEA volume commitments. (*Id.* ¶ 52.) It further stated that Ballard's "$150 million long-term MEA supply contract provides forward visibility on baseload MEA production volumes" and that "[i]n addition to minimum MEA volumes, we also expect Ballard to realize value at the stack level from our participation in" the joint venture. (*Id.*)

## B. Operational Progress

Plaintiffs allege that Defendants overstated the operational progress of the joint venture. On September 5, 2017, Ballard issued a press release announcing the "Ceremonial Opening of Ballard's China Stack Joint Venture Production Facility," which stated that the joint venture "is

currently ramping to an annualized production capacity of 6,000 fuel cell stacks by late 2017." (*Id.* ¶ 54.)  In a report (the "Spruce Point Report") released on January 25, 2018, (*see id.* ¶ 5), Spruce Point Capital Management ("Spruce Point") suggested that this statement significantly overstated the joint venture's production capacity, because "[i]ndustry insiders stated that they believe the . . . joint venture is only able to produce a few hundred fuel cell stacks per year." (Decl. of Thomas P. Swigert dated Aug. 21, 2018, Ex. B ("Spruce Point Report"), ECF No. 26-2, at 42.[3])

Plaintiffs also allege that Defendants overstated the progress of Ballard's strategic collaboration with Broad-Ocean.  On September 30, 2016, Ballard announced the "commissioning and deployment of an initial 12 fuel cell-powered buses in . . . the City of Foshan." (Am. Compl. ¶ 77.)  On October 18, 2016, Ballard announced the "commissioning and deployment" of an additional "10 fuel cell-powered buses in the City of Yunfu." (*Id.* ¶ 78.)  On January 3, 2017, Ballard issued a press release stating that its fuel cell engines "are powering more than 80 buses around the globe," including "24 in the Cities of Foshan and Yunfu, China." (*Id.* ¶ 79.)  In its September 24, 2017 presentation, Ballard stated that it had "24 buses delivered in Guangdong Province" and "90 new buses entering service." (*Id.* ¶ 80.)

In its report, Spruce Point suggested that Ballard's statements regarding the number of buses deployed in Yunfu and Foshan were inaccurate.  According to Spruce Point, on a tour of a Foshan factory, "investigators were told that [a bus company] had produced 114 fuel cell buses

---

[3] Although the Spruce Point Report is not attached to the amended complaint, this Court will consider it and the press releases quoted in the amended complaint in deciding the instant motion because they are "incorporated into the [amended] complaint by reference" and are "documents known to [Plaintiffs] and upon which [they] relied in bringing suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citations omitted).  This Court will also consider Ballard's Annual Information Form, because it is information "publicly announced on [Ballard's] website" and "the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quoting *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2005)).

but they were 'offsite being painted'" and "an employee of the bus company later stated that he believed they had produced less than 50 fuel cell buses to date, of which 11 have license plates." (Spruce Point Report at 43.) Spruce Point also claimed that its "[i]nvestigators saw a total of 5 demonstration buses in Yunfu Tech Park and only two had license plates." (*Id.* at 13.) Spruce Point further stated that a "refueling station attendant told our investigators that there are no demonstration lines operating in Guangdong and that no bus lines are in service in Sanshui or Yunfu." (*Id.*)

### C. Broad-Ocean's Financial Condition

In addition to Ballard's statements about the joint venture, Plaintiffs also identify several statements that Ballard made about Broad-Ocean that Plaintiffs claim were false and misleading. On January 3, 2017, Ballard issued a press release stating, among other things, that Ballard had received "[f]uel cell orders from strategic partner [Broad-Ocean] to power 10,000 commercial vehicles that will be deployed in its China vehicle leasing business, thereby creating significant demand pull-through for Ballard technology." (Am. Compl. ¶ 61.) The 10,000 vehicles were also referenced in a March 3, 2017 conference call, in which MacEwen mentioned Broad-Ocean's previous "commit[ment] to a program with two [original equipment manufacturers] for 10,000 fuel cell commercial vehicles to be used in its China-based leasing business." (*Id.* ¶ 63.)

In the same conference call, MacEwen discussed a "technology transfer license and supply deal" entered on February 16, 2017, pursuant to which "Broad-Ocean plans to manufacture Ballard's designed fuel cell engines in three strategic regions in China." (*Id.*) MacEwen also stated that, since the signing of the deal on February 16, Broad-Ocean "signed two major deals using Ballard modules from the planned production capacity" and "our initial estimate of $25 million . . . now appears very conservative." (*Id.*)

Later in 2017, Ballard announced it had entered an "approximate $18 million supply contract to support the expected deployment of 400 . . . fuel cell engines integrated into clean energy buses and trucks" and an "approximate $11 million transaction . . . for the deployment of 200 . . . fuel cell engines." (*Id.* ¶ 67.) In its Management Discussion and Analysis for the second quarter of 2017, Ballard explained that these announcements "mean[] that Ballard is planning to support Broad-Ocean through the deployment of 600 fuel cell engines having a total value of approximately $29 million." (*Id.*)

On September 14, 2017, Ballard participated in an Investor and Analyst Day in New York City, where it delivered a presentation (the "Ballard Presentation") about its investment strategies in China. (*Id.* ¶ 69.) Ballard then introduced Charles Lu, Broad-Ocean's Founder and Chairman, who gave a presentation about Broad-Ocean (the "Broad-Ocean Presentation"). (*Id.* ¶ 70.) The Broad-Ocean Presentation described several projects that Broad-Ocean was involved in. Among other things, the presentation claimed that Broad-Ocean would "[i]nvest 540 million dollar[s] at Wuhan to set up a new energy vehicle industry park, which will include power train, motor and [fuel cell] engine[s]." (*Id.* ¶ 72.) The presentation also stated, "Broad-Ocean and Zhongtong Bus to form [sic] a $75 million joint venture . . . to develop a new fuel cell bus platform and powertrain" which involved a "$400 million total investment." (*Id.*) Additionally, the presentation noted that Broad-Ocean had a "Key Partnership[]" with "Foton," which it described as a "[t]op bus company at China, based at Beijing." (*Id.*) Finally, the presentation stated that Broad-Ocean's "Volume Expectations" included a "[t]argeting opportunity for 16,000 vehicles in 5 years." (*Id.*)

Plaintiffs allege that the Spruce Point Report revealed that the projects described in the Broad-Ocean Presentation were unlikely to succeed. (*Id.* ¶ 74.) According to Spruce Point, by 2018, Broad-Ocean had "back[ed] out of the Wuhan project." (Spruce Point Report at 6.)

Additionally, "registration records" indicated that the Zhongtong Bus joint venture "had [not] been legally established" and Broad-Ocean had "no investment cash flow account that matches this level of investments." (*Id.* at 50.) Finally, Foton, with which Broad-Ocean claimed to have a "[k]ey [p]artnership," made a "decision to source its fuel cell engines from Sinohytec," one of Ballard's competitors. (*Id.* at 33.)

### D. Ballard's Order Backlog and Order Book

Plaintiffs allege that Ballard made misstatements about its Order Backlog and Order Book in connection with the joint venture. On September 13, 2017, Ballard issued a press release announcing its Order Backlog and Order Book as of June 30, 2017. (Am. Compl. ¶ 82.) The press release quotes MacEwen as stating that Ballard's "strong Order Backlog and 12-month Order Book numbers . . . underscore Ballard's positive and continuing growth trajectory" and that Ballard had developed "strategic activities and plans designed to ensure ongoing improvement in [Ballard's] market positioning, financial results and positive return for Ballard shareholders." (*Id.*) MacEwen also states, "Moving forward, we intend to provide updates to our Order Backlog and . . . Order Book numbers on a quarterly basis, consistent with our ongoing approach to providing financial and operational transparency." (*Id.*) Similarly, a November 1, 2017 press release announcing Ballard's Order Backlog and Order Book as of the third quarter of 2017 quotes MacEwen as stating that Ballard is "well positioned to . . . maintain our positive trajectory into 2018." (*Id.* ¶ 84.)

Based upon the above alleged misrepresentations, Plaintiffs assert a claim for securities fraud against both Defendants under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*, and its implementing regulation, Rule 10b-5, 17 C.F.R. § 240.10b-5. (Am. Compl. ¶¶ 116–19.) Plaintiffs also assert a claim against MacEwen for control personal liability under § 20(a) of the Exchange Act. (*Id.* ¶¶ 120–21.)

## II.   LEGAL STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). However, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Sierra Club*, 911 F.3d at 88 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Additionally, "[t]o withstand a Rule 12(b)(6) motion on securities fraud claims, a plaintiff must satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (the 'PSLRA'), 15 U.S.C. § 78u-4(b)." *GE Invs. v. Gen. Elec. Co.*, 447 F. App'x 229, 230 (2d Cir. 2011). To satisfy Rule 9(b), the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (citation and internal quotation marks omitted). Under the PSLRA, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[4] 15 U.S.C. § 78u-4(b)(2).

---

[4] Like Rule 9(b), the PSLRA also requires a plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

"Under Section 10(b) and Rule 10b-5, the required state of mind is 'scienter,' or an intent 'to deceive, manipulate, or defraud.'" *First N.Y. Sec. LLC v. United Rentals Inc.*, 391 F. App'x 71, 73 (2d Cir. 2010) (quoting *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Puddu v. 6D Glob. Techs., Inc.*, 742 F. App'x 553, 556 (2d Cir. 2018) (quoting *ECA v. JP Morgan Chase Co.*, 533 F.3d 187, 198 (2d Cir. 2009)). However, "[t]o qualify as 'strong,'" the inference of scienter from the facts alleged "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

### III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD

To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Charney v. Wilkov*, 734 F. App'x 6, 9 (2d Cir. 2018) (quoting *Stoneridge Inv. Partners LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008)). Here, Defendants argue that Plaintiffs have failed to state such a claim because they have not alleged actionable misrepresentations, scienter, or loss causation.

#### A. Misrepresentations

As discussed above, Plaintiffs contend that Defendants made misrepresentations concerning: (1) the value of Ballard's joint venture and strategic collaboration with Synergy and

Broad-Ocean; (2) the operational progress of the joint venture; (3) Broad-Ocean's financial condition; and (4) Ballard's Order Book and Order Backlog.  (Am. Compl. ¶¶ 39–86.)

### 1.  The Value of the Joint Venture and Strategic Collaboration

Plaintiffs allege that Defendants' statements regarding the value of the joint venture and strategic collaboration were false and misleading because Defendants "did not merely project that the deal *might* be worth up to $170 million," but "insisted that it would have a '*minimum* value to Ballard.'"  (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 33, at 15.) However, Ballard's use of the word "minimum" cannot be viewed in isolation.  The July 18, 2016 press release states "the transaction has a *contemplated* minimum value to Ballard of $168 million over 5-years [sic]."  (Am. Compl. ¶ 39 (emphasis added).)  The December 22, 2016 press release describes the transaction as "having a '*contemplated* minimum value to Ballard of $170 million over 5-years [sic].'"  (*Id.* ¶ 52 (emphasis added).)  Similarly, the October 25, 2016 and September 5, 2017 press releases state that "the transaction has an *estimated* minimum value to Ballard of $170 million over 5-years [sic]."  (*Id.* ¶¶ 44, 54 (emphasis added).)  The words "contemplated" and "estimated" make clear Ballard was not insisting that the deal would have any particular value.

Plaintiffs argue that Defendants also tried to assure investors that the estimated value of the joint venture was "credible and attainable" by making several misleading statements.  (Opp'n at 15.)  In particular, Plaintiffs cite Ballard's statements that "the joint venture's 'minimum annual MEA volume commitments . . . in excess of $150 million' would 'provide forward visibility on baseload MEA production volumes'" and that Ballard "expect[ed] Ballard to realize value at the stack level from our participation in" the joint venture.  (*Id.* at 7, 15 (quoting Am. Compl. ¶ 56).) Plaintiffs also cite Ballard's presentation stating that its contracts with Broad-Ocean, Synergy and others, would "ensure demand, production capacity & capital."  (*Id.* at 15 (quoting Am. Compl.

¶ 43).)  However, these statements—and the statements about the $168 or $170 million value of the transaction—are "forward-looking" and "speak predictively about the future," rather than stating present facts.[5]  *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010)).

The PSLRA contains a safe harbor for forward-looking statements, which provides that "a defendant is not liable if [1] the forward-looking statement is identified and accompanied by meaningful cautionary language *or* [2] is immaterial *or* [3] the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading."  *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (citation omitted); *see also* 15 U.S.C. § 78u-5(c).  "Because '[t]he safe harbor provision is written in the disjunctive,' a forward-looking statement is protected . . . if any of the three prongs applies."  *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016) (quoting *Slayton*, 604 F.3d at 766).

The press releases containing the statements at issue have disclaimers that identify "risks and uncertainties that may cause Ballard's actual results to be materially different."  (*See* Mem. at 4 n.3 (quoting July 26, 2016 press release).)  While Defendants note that one of the identified risks is "detrimental reliance on third parties," (*id.*), this language is vague and refers to a "generally applicable risk factor," not one that is specific to the joint venture or strategic collaboration.  *Slayton*, 604 F.3d at 772 (citation omitted).  Thus, the disclaimer itself is not sufficient to bring Defendants within the first prong of the PSLRA's safe harbor.[6]

---

[5] The PSLRA contains several definitions of a "forward-looking statement," including "a statement containing a projection of revenues, income (including income loss), . . . or other financial items, . . . a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer" and "a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management." 15 U.S.C. § 78u-5(i)(1).

[6] As Defendants note, the press releases also direct investors to "refer to Ballard's Annual Information Form" for a "detailed discussion of these and other risk factors." (*See, e.g.*, July 18, 2016 Press Release; *see also* Reply Mem. in Further Supp. of Defs.' Mot. to Dismiss ("Reply"), ECF No. 34, at 6 n.2 (citing

However, Defendants are protected under the third prong, because Plaintiffs have not alleged that Defendants' statements were made with actual knowledge that they were false or misleading. Under *Slayton v. American Express Co.,* upon which Plaintiffs rely, to support a finding of actual knowledge, "the facts alleged [in the amended complaint]" must make an "inference that the defendants (1) did not genuinely believe the statement" at issue, "(2) actually knew that they had no reasonable basis for making the statement, or (3) were aware of undisclosed facts tending to undermine the accuracy of the statement, 'cogent and at least as compelling as any opposing inference.'"   604 F.3d at 775 (quoting *Tellabs*, 551 U.S. at 323).  The facts in the amended complaint do not do so.

Plaintiffs repeatedly allege that "Ballard had no reasonable basis" to believe that the joint venture and Broad-Ocean could fulfill their commitments. (Am. Compl. ¶¶ 4, 46, 56, 65.)  But Plaintiffs do not allege that Defendants "*actually knew* that they had no reasonable basis" for such a belief. *Slayton*, 604 F.3d at 775 (emphasis added).  Nor do Plaintiffs allege facts to support an inference that Defendants had such knowledge.  Instead, Plaintiffs claim that Broad-Ocean's "relationships in China were far weaker than Ballard investors had been led to believe." (Am. Compl. ¶ 90.)   However, the statements that Plaintiffs identify concerning Broad-Ocean's relationships in China were made in a presentation by Broad-Ocean, not Ballard.  (*See id.*) Plaintiffs have not alleged facts to support an inference that Ballard made knowingly false statements.

---

Ballard Power Systems Inc. Annual Information Form (Mar. 1, 2017), *available at* http://www.ballard.com/docs/default-source/financial-reports/2017/2017-annual-information-form.pdf?sfvrsn=4 ("Annual Information Form"), at 40, 43, 47, 49.) Because Defendants do not identify specific language in the Annual Information Form they believe is applicable, this Court will not decide whether the Annual Information Form could provide a basis to find Defendants' statements are protected under the first prong of the PSLRA's safe harbor.

Similarly, Plaintiffs allege that Broad-Ocean's "financial condition was significantly worse than Ballard's investors had been led to believe," but the information that Plaintiffs cite is from the Spruce Point Report, not Ballard. (*Id.* ¶ 92; *see also id.* ¶¶ 89, 91, 93–95.) Plaintiffs argue in their brief that "[a]ll of the facts revealed by Spruce Point were either known by Defendants or could have easily been discovered through basic due diligence." (Opp'n at 2.) But Plaintiffs' complaint contains no allegations concerning due diligence, and "a party may not amend pleadings through a brief." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Moreover, Plaintiffs' assertion that the facts in the Spruce Point Report were "known by Defendants" is conclusory, and Plaintiffs' suggestion that Ballard "'would' have learned" of the information in the Spruce Point Report "if [it] had performed . . . 'due diligence'" is "insufficient to establish scienter . . . 'under the PSLRA's heightened pleading instructions.'" *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 646 (2d Cir. 2015) (quoting *S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 112 (2d Cir. 2009)); *see also Saltz v. First Frontier, LP*, 485 F. App'x 461, 464–65 (2d Cir. 2012) (finding an allegation that "red flags existed that would or should have warned . . . [defendants] had they conducted even basic due diligence, . . . without more, is insufficient to establish scienter"). Because Plaintiffs have not alleged that Defendants' statements about the value of the joint venture and strategic collaboration were made with actual knowledge that they were false or misleading, the statements are protected under the PSLRA's safe harbor.

## 2. Operational Progress

Plaintiffs allege that Defendants overstated the production capacity of the joint venture by claiming in September 2017 that it was "currently ramping to an annualized production capacity

of 6,000 fuel cell stacks by late 2017." (Opp'n at 9 (quoting Am. Compl. ¶ 54).)  This statement is forward-looking, because it is a prediction of what the production capacity will be.[7]

As explained above, liability for forward-looking statements "attaches only upon proof of knowing falsity." *Slayton*, 604 F.3d at 774 (quoting *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 274 (3d Cir. 2009)).  Plaintiffs have not alleged that Defendants had such knowledge.  Plaintiffs claim that the statement is misleading based on the Spruce Point Report's reference to "industry insiders" who "believe the . . . joint venture is only able to produce a few hundred fuel cell stacks per year" as of January 2018.  (Spruce Point Report at 42.)  But Plaintiffs do not allege that these "industry insiders" were affiliated with Ballard and have not otherwise alleged facts to support an inference that Defendants lacked a reasonable basis to believe the joint venture would achieve its predicted production capacity.

Defendants also allege that Defendants overstated the number of fuel cell-powered buses deployed in China.  In press releases in September and October of 2016, Ballard announced the "commissioning and deployment" of 12 fuel cell-powered buses in the district of Sanshui in Foshan and 10 fuel cell-powered buses in Yunfu.  (Am. Compl. ¶¶ 76, 78.)  In 2017, Ballard gave a presentation stating that its "[p]rogram for fuel cell buses was progressing in Fushan [sic] and Yunfu" and that there were "24 buses delivered" and "90 new buses entering service" in China. (*Id.* ¶ 79.)  These statements concern present facts, and Plaintiffs allege that they were false because "even as of January 2018," there were "only 11 licensed buses in Foshan, only 5

---

[7] Defendants' claim that the joint venture is "currently ramping" its capacity, (Am. Compl. ¶ 54), is "too vague to be actionable apart from the future projection," because it "does not provide specific information about the current situation, but merely says that, whatever the present situation is, it makes the future projection attainable." *In re Supercom Inc. Sec. Litig.*, No. 15 Civ. 9650 (PGG), 2018 WL 4926442, at *21 (S.D.N.Y. Oct. 10, 2018) (citation omitted); *see also Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 59 (E.D.N.Y. 2011) (finding that defendants' statements "impli[ed] . . . that they were making progress towards th[eir] goal," but "[a]bsent more specific factual claims regarding what progress was being made, defendants' present-tense statements are too vague to be actionable").

demonstration buses in Yunfu Tech Park and only two had license plates," and there were "no bus lines . . . in service in Sanshui or Yunfu." (*Id.* ¶ 81.) Thus, Plaintiffs have adequately alleged that Defendants made false statements of fact about the number of buses currently deployed in China. However, as explained below, Plaintiffs have not alleged the statements were made with scienter.

### 3. Broad-Ocean's Financial Condition

Plaintiffs argue that "in an attempt to convince investors that [Broad-Ocean] was a reliable partner . . . , Defendants made numerous statements touting [Broad-Ocean's] leasing business and overall financial condition." (Opp'n at 6.) None of the statements Plaintiffs identify are actionable. Defendants' statements about Broad-Ocean's "supposed 'EV expertise, customer base, scale of operations and supply chain strength,'" (Am. Compl. ¶ 41), are "inactionable 'puffery,'" because they are "statements about reputation" that are "too general to cause a reasonable investor to rely upon them." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (citation and internal quotation marks omitted).

Plaintiffs also allege that Defendants sought to bolster investors' confidence in Broad-Ocean by "announc[ing] several new contracts involving [Broad-Ocean]." (Opp'n at 6.) In its Management's Discussion and Analysis for the second quarter of 2017, Ballard discussed a technology transfer transaction that would enable Broad-Ocean to "manufacture fuel cell modules in three strategic regions in China" with "an estimated value of approximately $25 million in revenue to Ballard over the initial 5-year term." (Am. Compl. ¶ 67.) Ballard also stated that it had entered an "approximate $18 million supply contract to support the expected deployment of 400 . . . fuel cell engines integrated into clean energy buses and trucks" and an "approximate $11 million transaction . . . for the deployment of 200 . . . fuel cell engines." (*Id.*) However, Plaintiffs do not allege that the announcements were false, nor do Plaintiff allege facts that support an

inference that they were misleading.  To the contrary, Plaintiffs allege that Defendants later made

statements—which Plaintiffs do not allege were false or misleading—indicating that their earlier

announcements were accurate.  As to the $25 million technology transfer, in a February 28, 2018

press release, Ballard stated that it had "localiz[ed] . . . stack and module assembly operations in

China, which generated associated one-time revenue from technology transfer activities."  (*Id.*

¶ 97.)  As to the supply contracts, Ballard's Management's Discussion and Analysis for the fourth

quarter of 2017 "confirmed that it had delivered '600 fuel cell engines and related components' to

[Broad-Ocean] in 2017" and "earned $28.7 million from these sales."  (*Id.* ¶ 98.)

Plaintiffs also allege that Defendants made false representations "about [Broad-Ocean's]

supposed 'progress' in 'advancing key partnerships.'"  (Opp'n at 15.)  Specifically, Plaintiffs assert

that statements were made that Broad-Ocean had "[i]nvest[ed] 540 million dollar[s] at Wuhan to

set up a new energy vehicle industry park," that Broad-Ocean "was about 'to form a $75 million

joint venture' with Zhongtong Bus," and that "Ballard had received purchase orders from [Broad-

Ocean] for '16,000 buses and commercial vehicles.'"  (Opp'n at 15 (citations omitted).)  But the

statements about Broad-Ocean's partnerships, Wuhan, and Zhongtong Bus were made in the

Broad-Ocean Presentation, not a presentation by Ballard.  (*See* Am. Compl. ¶ 72.)

Both Ballard and Broad-Ocean made statements regarding Ballard's receipt of purchase

orders from Broad-Ocean for "16,000 buses and commercial vehicles."   (*See id.* ¶¶ 64, 72.)

Plaintiffs claim that Ballard's statements were misleading because "Ballard had no reasonable

basis for assuring investors that [Broad-Ocean] could fulfill its purported commitment to

purchase . . . '16,000 buses and commercial vehicles.'"  (*Id.* ¶ 65.)  But Plaintiffs have not

identified any specific assurances that Ballard made to investors regarding Broad-Ocean's ability

to fulfill this commitment.[8]  Because Plaintiffs have not alleged that Defendants' statements about Broad-Ocean's financial condition were false or misleading, they are not actionable.

### 4. Ballard's Order Backlog

Plaintiffs argue that Ballard's press releases announcing its Order Backlog and Order Book were misleading because they implied that Ballard had a 'positive and continuing growth trajectory' 'on a quarterly basis' and was 'well positioned . . . to maintain [its] positive trajectory into 2018.'" (Opp'n at 10.)  But the press releases do not state or imply that Ballard anticipated positive growth on a quarterly basis.  The September 13, 2017 press release states that Ballard "intend[s] to *provide updates* to our Order Backlog and . . . Order Book numbers on a quarterly basis."  (Am Compl. ¶ 82 (emphasis added).)  None of the other press releases that Plaintiffs identify mention quarterly financial information.[9]

Plaintiffs also assert that Ballard's statements in the September 13 and November 1, 2017 press releases about Ballard's "positive trajectory" in 2018 were misleading because "Defendants knew that revenues were expected to decrease in the first quarter of 2018."  (*Id.* ¶¶ 83, 85.)  But knowledge that revenues were expected to decrease in the first quarter of 2018 does not provide a basis to infer Defendants did not believe that Ballard would maintain an overall positive trajectory

---

[8] In fact, in its Annual Information Form, Ballard warned investors that it "sell[s] most of our products in the Heavy Duty Motive market to a small number of Chinese customers" and that Ballard's "future success is dependent upon the continued purchases of our products by these customers.  Any fluctuations in demand from these customers may negatively impact our business, financial conditions, and results of operations." (Annual Information Form at 40.)

[9] Plaintiffs' allegation that the September 13, 2017 press release "falsely implied . . . 'ongoing improvement in [Ballard's] market positioning[] [and] financial results'" is similarly without merit. (Am. Compl. ¶ 83.) The press release states that Ballard has "strategic activities and plans designed to ensure ongoing improvement in the Company's market positioning, financial results, and positive return for Ballard shareholders." (*Id.* ¶ 82.)  But Plaintiffs do not allege that Ballard made any representations that those strategic activities or plans would succeed.

for the year, and Plaintiffs have not alleged any other facts to support such an inference. Thus, the statements in the press releases discussing the Order Backlog and Order Book are not actionable.

## B. Scienter

Where, as here, a complaint "does not allege any motive . . . to defraud and premises [its] claim entirely on a theory of recklessness, the strength of the circumstantial allegations must be correspondingly greater." *In re Advanced Battery Techs., Inc.*, 781 F.3d at 644; (*see also* Opp'n at 19). "[C]ircumstances [that] may give rise to a strong inference of the requisite scienter" include allegations that defendants "knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). "To determine whether a plaintiff has specifically alleged defendants' knowledge of facts or access to information contradicting their public statements, Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] *at the same time* they made their misleading statements." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009) (internal citations and quotation marks omitted); *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."). Similarly, when plaintiffs allege that "defendants failed to review or check information that they had a duty to monitor," a plaintiff must "identif[y] specific information that could have been uncovered by [defendant] in the course of a reasonable investigation *at that time*." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 666 (S.D.N.Y. 2017) (emphasis added).

Here, Plaintiffs rely on the Spruce Point Report to show that Defendants' statements about bus deployments were false. (*See* Am. Compl. ¶ 81.) But that report was released after Defendants made the statements at issue. Plaintiffs' allegation that "the facts revealed by Spruce Point . . . could have easily been discovered through due diligence," (Opp'n at 2), "is insufficient to establish scienter.'" *In re Advanced Battery Techs., Inc.*, 781 F.3d at 646; *see also IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 28 (2d Cir. 2014) (finding plaintiffs had failed to allege scienter where "the only third-party due diligence report specifically identified in the complaint was published . . . well after the [misstatements] at issue"). Moreover, Defendants contend that "Ballard's statements regarding bus deployments in China were based on the information available at the time." (Mem. in Supp. of Defs. Mot. to Dismiss ("Mem."), ECF No. 25, at 19.) Even Spruce Point indicated that the tally of fuel cell-powered buses that it received from the factory in Foton was much higher than the one it received from the factory's employee. (*See* Spruce Point Report at 43.) Thus, even if one could infer Defendants knew the numbers of buses reported were inaccurate, there is a "permissible competing inference[] . . . that the statements 'were the result of merely careless mistakes' by the [D]efendants 'based on false information fed' to them by others." *S. Cherry St., LLC*, 573 F.3d at 111 (quoting *Teamsters Local 445*, 531 F.3d at 197). Because "this inference [i]s 'at least as compelling' as the conscious-recklessness inference advocated by the [P]laintiff[s]," Plaintiffs have not alleged the statements were made with scienter.[10] *Id.* (citation omitted).

As Plaintiffs do not allege that Defendants made actionable statements with scienter, Plaintiffs have failed to state a claim for securities fraud, and "th[is] Court need not reach the issue

---

[10] Because Plaintiffs have not otherwise alleged that Defendants' statements were made with scienter, Plaintiffs' allegation that "Defendants' scienter is supported by the fact that . . . the joint venture's $150 million MEA volume commitments, and the purchase orders by [Broad-Ocean] were . . . core operations" of Ballard" is without merit. (Am. Compl. ¶ 104.)

of loss causation."[11] *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 172 (S.D.N.Y. 2015)

(collecting cases).  Absent a primary violation of the securities laws, Plaintiffs' claim for control

person liability against MacEwen also fails.  *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 739

F. App'x 679, 685 (2d Cir. 2018) (noting that the "elements of a § 20(a) claim" include "a primary

violation [of the securities laws] by the controlled person").

## IV.    CONCLUSION

Defendants' motion to dismiss, (ECF No. 24), is GRANTED.[12]   The Clerk of Court is

directed to close the motion accordingly.

Dated: New York, New York
       March 20, 2019

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[11] Plaintiffs argue that they have pled loss causation because the Spruce Point Report and Ballard's press releases from February and May 2018 constitute corrective disclosures and because the Spruce Point Report contains facts demonstrating the materialization of undisclosed risks. (Opp'n at 23–24.)

[12] At oral argument, Plaintiffs requested leave to amend if Defendants' motion were granted. (*See* Transcript of Oral Argument dated Feb. 20, 2019, ECF No. 38, at 37:24–25, 41:14–20.)  Plaintiffs may seek leave to file an amended pleading by letter application with a proposed second amended complaint within thirty days, if such amendment would not be futile.